IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**SAMUEL "TONY" PUMPHREY**                                                                   **Plaintiff**

**v.**                                                                   **Civil No. 3:23cv299-MPM-RP**

**TRIAD LIFE SCIENCES INC. and**
**CONVATEC TRIAD LIFE SCIENCES, LLC,**                                   **Defendants**

**ORDER**

This cause comes before the court on the motion of defendants Triad Life Sciences, Inc. and Convatec Triad Life Sciences, LLC to compel arbitration. Plaintiff Samuel Pumphrey has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.[1]

On August 9, 2023, plaintiff filed this diversity action in this court, seeking damages for what he alleges to have been his unlawful termination, in contravention of the Mississippi Supreme Court's decision in *McArn v. Allied Bruce-Terminix Co.*, 626 So.2d 603, 607 (Miss. 1993). On October 10, 2023, defendants responded with a Rule 12 motion to dismiss in which, in their seven-page brief, they relied upon insufficiency of the pleading arguments and also contended that the misconduct reported by plaintiff was not actually illegal, thus defeating a *McArn* claim. [Docket entry 5 at 3-4].

---

[1] This court notes that the parties filed a joint motion to stay this case pending a ruling on the motion to compel arbitration. Since this motion clearly involves threshold issues of importance to both sides, this court elected to expedite a ruling on it, even though several such motions are pending.

1

It is this motion to dismiss which serves as the basis for plaintiff's opposition to the motion to compel arbitration in this case. In arguing that the filing of this motion served as a waiver of the right to arbitration, plaintiff writes that:

> The Fifth Circuit has previously held that a party waives arbitration by seeking a decision on the merits before attempting to arbitrate. *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.,* 575 F.3d 476, 480 (5th Cir. 2009); *Miller Brewing Co. v. Ft. Worth Distributing Co.*, 781 F.2d 494, 498 (5th Cir. 1986) ("Any attempt to go to the merits and to retain still the right to arbitration is clearly impermissible."). Accordingly, by leading off with a Rule 12(b)(6) motion to dismiss the case on its merits and obtain total and final victory, rather than by filing a motion to compel mediation/arbitration, Defendants engaged in an overt act to resolve the case through litigation through arbitration.

[Brief at 3].

Plaintiff is correct in quoting the Fifth Circuit's 1986 decision in *Miller Brewing* for the proposition that "[a]ny attempt to go to the merits and to retain still the right to arbitration is clearly impermissible." *Id.* Based on this language, one might assume that the filing of a motion to dismiss would be sufficient to waive a right to arbitration, but there are Fifth Circuit cases which reached a contrary result. In their brief, defendants rely heavily upon *Williams v. Cigna Financial Advisors, Inc.,* in which the Fifth Circuit found no waiver in a case where the defendant filed its motion for a stay pending arbitration as soon as it discovered that the dispute was subject to arbitration, even though it did not acquire this knowledge until after it had removed the action to federal court, filed motions to dismiss and to stay proceedings, filed an answer, asserted a counter claim, and participated in discovery. 56 F.3d 656, 661 (5th Cir. 1995). The Fifth Circuit in *Cigna* thus based its holding upon the defendant's lack of knowledge of its right to arbitration, and, as discussed below, this court finds this to be the crucial distinguishing factor here.

Having considered the parties' arguments, this court agrees with plaintiffs that by filing their motion to dismiss, defendants made an attempt to "go to the merits." It is difficult to

2

understand how this court could conclude otherwise, given that defendants' central argument was that plaintiff's claims substantively lacked merit under Mississippi law. This court notes that, in a 2010 decision, the Fifth Circuit held that the filing of a motion to dismiss by the defendant supported a finding of waiver since "[a] party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *In re Mirant Corp.*, 613 F.3d 584, 589–90 (5th Cir. 2010), *citing Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.,* 575 F.3d 476, 480 (5th Cir. 2009).

In seeking to distinguish *Mirant* and similar cases, defendants note that they did not expressly seek a dismissal "with prejudice." It is clear to this court, however, that if it had accepted defendants' argument that plaintiff failed to state a valid claim under *McArn,* then it would, in fact, have dismissed the case with prejudice. In so stating, this court notes that, in their motion to dismiss, defendants wrote that:

> In the Complaint, Plaintiff Samuel "Tony" Pumphrey ("Pumphrey") asserts a single claim challenging the termination of his employment under *McArn v. Allied Bruce-Terminix Co.*, 626 So.2d 603 (Miss. 1993). Pumphrey's *McArn* claim is based on his allegation that he was terminated because he reported actions that he "reasonably believed" were violations of the Anti-Kickback Statute ("AKS").
> Pumphrey's pleading is fatally flawed. Under settled law, a viable *McArn* claim must involve opposing or reporting conduct that is actually criminal; Pumphrey's subjective belief is irrelevant. And because alleging violations of the AKS is alleging fraud claims, Pumphrey had to have pled the factual basis for the violation he alleges with particularity under Fed. R. Civ. P. 9(b). Pumphrey's pleading fails to meet that pleading standard. His Complaint accordingly fails to state a claim for which relief can be granted and should be dismissed.

[Motion to dismiss at 1]. Defendants thus sought a dismissal of the entire complaint, based upon allegations that plaintiff's claim was in fundamental conflict with Mississippi law. This court can discern no universe in which these arguments do not represent an attempt to "go to the merits" of this case. If found persuasive, defendants' *McArn* arguments constitute a clear basis for dismissing this case with prejudice, and this court concludes that, by filing their motion to

3

dismiss, defendants "substantially invoke[ed] the judicial process" within the meaning of Fifth Circuit precedent. *See Forby v. One Techs., L.P.,* 13 F.4th 460, 465 (5th Cir. 2021).

In the court's view, this does not necessarily end the matter, since it appears that both Fifth Circuit and U.S. Supreme Court authority require that the litigant have been aware of its right to arbitrate at the time it "went to the merits." Indeed, this court notes that a 1996 Fifth Circuit decision found *Cigna* distinguishable based on a specific finding that the defendant in that case was fully aware of its right to arbitration at the time it extensively participated in litigation. *Huntington Bank v. Merrill Lynch*, 77 F.3d 479 (5th Cir. 1996). Specifically, the Fifth Circuit wrote that:

> In *Cigna*, this court found no waiver where a party filed its motion for a stay pending arbitration as soon as it discovered that the dispute was subject to arbitration, even though it did not acquire this knowledge until after it had removed the action to federal court, filed a motion to dismiss, filed a motion to stay proceedings, filed an answer, asserted a counter claim, and exchanged Rule 26 discovery. *Cigna*, 56 F.3d at 661. The facts of this case are contrary to those of *Cigna.*

*Id.*

This court believes that *Cigna* and *Huntington*'s emphasis on whether the defendant knew of its right to arbitration has been offered considerable support by a recent U.S. Supreme Court decision which, in most respects, favors plaintiff's arguments in this case. In his brief, plaintiff notes that the Fifth Circuit's test for waiver had previously included a prejudice requirement—that is, the substantial invocation of the judicial process was required to have inflicted prejudice or detriment on the opposing party. *See Forby*, 13 F.4th at 465. However, in *Morgan v. Sundance, Inc.*, 596 U.S. 411, 142 S. Ct. 1708, 1714 (2022), the U.S. Supreme Court held that "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." Based on *Morgan*, this court will not consider the issue of prejudice to plaintiff in this order, since it is no longer a

4

relevant factor to consider. This court notes that some district courts have speculated that *Morgan*'s admonition against adopting special pro-arbitration rules casts doubt upon the Fifth Circuit's repeated statement that there is a "strong presumption" against a finding of waiver and thereby casts doubt upon some of its more arbitration-friendly decisions. *See Vollmering v. Assaggio Honolulu, LLC*, 2022 WL 6246881, at *12 (S.D. Tex. Sept. 17, 2022); *Seifert v. United Built Homes, LLC*, 2023 WL 4826206, at *9 (N.D. Tex. July 27, 2023)(agreeing with *Vollmering*).

It seems possible that *Morgan* will, in fact, cause the Fifth Circuit to take a fresh look at its arbitration waiver jurisprudence, but, having reviewed the Supreme Court's decision, it believes that it actually *strengthens* one aspect of the *Cigna* holding relied upon by defendants, namely that relating to knowledge. In so stating, this court notes that the Supreme Court in *Morgan* stated that the basic federal-law definition of waiver is "the intentional relinquishment or abandonment of a known right." *Morgan,* 142 S. Ct. at 1714 (2022), citing *United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L.Ed.2d 508 (1993). This court believes that the words "known right" are crucial in this context, and the Supreme Court in *Morgan* emphasized that "[t]o decide whether a waiver has occurred, the court focuses on the actions of the person who held the right." *Id.* The Supreme Court also noted that the Eighth Circuit waiver standard before it specifically included a requirement that the litigant "knew of the right" in question in order to have waived it. *Morgan,* 596 U.S. at 415. It seems clear that plaintiff would have this court ignore the issue of whether, by filing their motion to dismiss, defendants were "intentional[ly] relinquish[ing] a known right" and focus instead on a more narrow inquiry into whether they "substantially invoked the judicial process" by seeking dismissal. For its part, however, this court concludes that it could only limit itself to such a narrow inquiry by ignoring

5

the *Morgan/*Olano definition of waiver, which makes clear that the issue of knowledge is crucial in this context. This court will therefore proceed to an analysis of the issue of knowledge.

While this court thus believes that *Morgan* supports the *potential* for a defendant to rely upon his lack of knowledge of the right to arbitration in opposing a finding of waiver, as the defendant in *Cigna* did, it believes that defendants' evidence on this point is rather weak in this case. Indeed, in arguing that they lacked notice of their right to arbitrate in this case, defendants argue that their *counsel* only gained knowledge of the arbitration agreement after filing their motion to dismiss. Specifically, defendants argue in their brief that:

> Nine days after Convatec filed the motion to dismiss, Pumphrey filed the First Amended Complaint (FAC) in which he pled additional facts, ostensibly to satisfy the applicable pleading standard. In the FAC, Pumphrey for the first time pled specific facts regarding his work-related contacts, highlighting contacts with the State of Tennessee. This allowed counsel for Convatec, armed for the first time with any level of detail from Pumphrey as to the basis of his claims, to determine and respond concerning the facts related to his claim as well as to jurisdiction and choice of law, which in turn resulted in the discovery of Pumphrey's December 7, 2021 Offer Letter with Triad Life Sciences, Inc., the predecessor entity to the current relevant Convatec business unit. At that point, counsel for Convatec discovered that the Offer Letter included an agreement to arbitrate. On November 22, 2023, Convatec filed its pending motion to compel arbitration.

[Reply brief at 2-3].

For his part, plaintiff argues that "[d]efendants' claim that they were unaware of the arbitration agreement that they drafted until after Plaintiff filed his first amended complaint is ridiculous on its face." [Docket entry 30 at 1, fn 1]. While this court believes that this issue is somewhat closer than plaintiff's characterization suggests, it concludes that the relevant inquiry in this case should be on the *party* and not its *counsel*. In so stating, this court reiterates that the Supreme Court in *Morgan* stated that "[t]o decide whether a waiver has occurred, the court focuses on the actions of the person who held the right." *Id.* This language clearly appears to be directed at the party, and not its counsel. This court further submits that it would be a slippery

6

slope indeed if courts began focusing on the knowledge and actions of *counsel* rather than parties, since the law's focus is properly upon the latter. It strikes this court that, if the law were otherwise, then parties wishing to claim ignorance of a certain fact would be able to accomplish this simply by hiring counsel who are, in fact, ignorant of it.

This court additionally observes that it is very easy for a particular attorney to say that he or she lacked knowledge of a particular fact, and it is very difficult for the opposing side to refute it. Thus, while this court has no reason to doubt counsel's assertion that she was unaware of the existence of the arbitration agreement in this case, a court setting general policy in this context must consider the broader implications of a particular holding, including its potential exploitation by unscrupulous individuals. This court therefore has serious concerns on this issue, and defendants offer it no authority suggesting that an attorney's stated ignorance of an arbitration provision should be imputed to her client, when that client actually drafted it and was thus clearly aware of its existence.

This court further concludes that the defendant in *Cigna* had a much stronger argument against a finding of knowledge than the defendants here. Indeed, the Fifth Circuit in *Cigna* noted that the arbitration agreement in that case had not been drafted by the defendant, but instead had been included by the Securities and Exchange Commission in a regulation. *Cigna,* 56 F.3d at 658. Specifically, the Fifth Circuit wrote in *Cigna* that:

> On October 1, 1993, the Securities and Exchange Commission amended its NASD rules to provide "for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of [NASD] or *arising out of the employment or termination of employment of associated person(s) with any member.*" While this regulation was not in effect when Williams signed his first U–4 Registration, it was in effect on October 20, 1993 when Williams executed a second U–4 Registration to sell securities in Colorado.

*Id*. Thus, the arbitration provision at issue in *Cigna* was not drafted by the defendants, and, furthermore, it was not included in the plaintiff's initial registration papers. Moreover, the Fifth

Circuit noted in *Cigna* that the plaintiff did not deny that the defendant lacked actual knowledge of the arbitration agreement in that case; *id.* at 661, n.3, while the plaintiff here dismisses defendants' disavowal of knowledge as absurd.

This court therefore regards *Cigna* as fully distinguishable from this case, and this conclusion negates what had appeared, on first blush, to be defendants' strongest authority. Indeed, this court notes that *Cigna* is the only Fifth Circuit Court of Appeals decision cited in support of defendants' argument that by filing their motion to dismiss, they did not "substantially invoke the judicial process." [Reply brief at 4]. Defendants' citation to *Cigna* initially struck this court as a powerful one, since, to reiterate, the Fifth Circuit in that case found no waiver in spite of the defendant having participated in litigation to a far greater extent than defendants did here. Closer review has made it clear to this court, however, that the Fifth Circuit's holding in *Cigna* was fully dependent upon its conclusion that the defendant lacked knowledge of the right to arbitrate when it participated in litigation. *Cigna*'s holding strikes this court as being quite correct under the facts of that case, given that the Supreme Court in *Morgan* made it clear that a "known right" to arbitrate is a basic requirement of a finding of waiver under federal law. *Id.* That being the case, it appears to this court that the defendant in *Cigna* could have participated in litigation to an even greater extent than it did, so long as this participation preceded its knowledge of the right to arbitrate. In this case, by contrast, defendants were aware of the arbitration provision which they themselves had drafted when they filed their motion to dismiss, and, that being the case, *Cigna*'s holding is simply inapplicable here.

As a final point, this court wishes to make clear its view that, accepting counsel's representations as true, defendants, and not their attorney, bear responsibility for their having lost their right to arbitration in this case. In so stating, this court notes that defendants cared enough

8

about arbitration to include a quite lengthy and detailed arbitration provision in their job offer to plaintiff. Moreover, defendants were clearly aware that this same employee had sued them. That being the case, this court is unable to excuse defendants' failure to simply reach out to their attorney and let her know that there was an arbitration agreement in plaintiff's employment contract and that they would like to see his claims against them arbitrated. Taking this simple step would have avoided the current controversy, and this court believes that parties who do not care enough to assert their rights should not be surprised when they lose them.

Defendants' motion to compel arbitration is therefore due to be denied.

It is therefore ordered that defendants' motion to compel arbitration is denied.

This, the 5th day of January, 2024.

/s/ Michael P. Mills
U.S. DISTRICT COURT